IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESLIE JACKSON,

        *Plaintiff*

        v.

DISTRICT OF COLUMBIA, et al.,

        *Defendants.*

No. 1:09-cv-00839 BJR
No. 1:10-cv-00604 BJR
(*designated related cases*)

## I.    INTRODUCTION

This matter comes before the court on two motions to dismiss filed by the defendants in *Jackson v. District of Columbia, et al.*, 1:09-cv-00839 (BJR) ("*Jackson I*") and *Jackson v. Rhee, et al.*, 1:10-cv-00604 (BJR) ("*Jackson II*").[1] Plaintiff Leslie Jackson brings this action on behalf of her minor son pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 et seq. ("IDEIA")[2], 42 U.S.C. § 1983 ("Section 1983"), Section 504 of

---

[1]    The cases are designated related pursuant to D.C. Local Rule 40.5(b)(2). The parties in each case are identical.

[2]    Until the 2004 revisions to the Act, it was known as the Individuals with Disabilities Education

ORDER-1

the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"). Defendants, the District of Columbia and Michelle Rhee, in her official capacity as Chancellor of the District of Columbia Public Schools ("DCPS"), seek to partially or entirely dismiss the operative complaints in each case pursuant to Federal Rule of Civil Procedure 12(b)(6) and the doctrine of *res judicata*.[3] Upon consideration of the motions and replies, the oppositions thereto, as well as the relevant law, the court finds as follows.

## II.    BACKGROUND

This matter has a long and laboured history. To date, five administrative complaints have been filed with the Student Hearing Office[4], three lawsuits have been filed in federal court, and an untold number of meetings and hearings have been held. At the center of this dispute is a child, AJP, who has moderate to severe physical disabilities and developmental delays. As a result, he qualifies for special education services through DCPS. The parties, despite admonishments from Hearing Officers and at least two district court judges, have been unable to agree on an individual education plan ("IEP") and placement for AJP. This court is concerned that the parties have become so entrenched in their battle that they long ago forgot what is important here—AJP. With this in mind, the court will now address the motions before it.

---

Act, or IDEA. This earlier abbreviation is reflected in passages quoted throughout this opinion.

[3]    Defendants move to dismiss the Amended Complaint in *Jackson I* (dkt. no. 9) and seek partial dismissal of the Complaint in *Jackson II* (dkt. no. 3).

[4]    The Student Hearing Office is part of the District of Columbia Superintendent of Education Office of Review and Compliance. A parent dissatisfied with an individual education plan developed for his or her child has a right to a due process hearing conducted by the state or local education agency before an impartial hearing officer. 20 U.S.C. § 1415(f)(1), (3). The decision of the hearing officer ("HOD") is final, and any party aggrieved by a HOD may challenge it in a civil action. *Id.* § 1415(i)(1), (2).

ORDER-2

A.    **Statutory Background**

       *1.    The IDEIA*

The IDEIA aims "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The D.C. court of appeals has explained the crucial role that the IEP plays in providing the FAPE the statute guarantees:

> If a child's initial evaluation suggests he is entitled to a FAPE, IDEA then requires the school district to create and implement an IEP, which is the "primary vehicle" for implementing the Act. *Honig v. Doe*, 484 U.S. 305, 311, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). The IEP is "[p]repared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child." *Id.* It "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.*; *see also* 34 C.F.R. § 300.343(b)(2) (requiring a "meeting to develop an IEP" within 30 days following the completion of a disabled student's initial evaluation).

*Lesense v. Dist. of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006); *see also Honig v. Doe*, 484 U.S. 305, 311 (1988) (Congress envisioned the IEP "as the centerpiece of the statute's education delivery system for disabled children").

The understandable hope on which the statute is based is that the implementation of an IEP will permit the child to improve. Thus, the IDEIA commands that a local educational agency ensure that a re-evaluation of each child is done when either the agency determines that "the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation," or if the child's parents or teacher requests it. 20 U.S.C. § 1414(a)(2)(A). Such an evaluation must occur at least once every three years, unless

ORDER-3

the local educational agency and the parent agree it is unnecessary. 20 U.S.C. § 1414(a)(2)(B)(ii); 34 C.F.R. § 300.303. Furthermore, beginning with the first IEP in effect once the child is 16, and updated annually thereafter, the IEP must include the following:

> (aa) appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills;
>
> (bb) the transition services (including courses of study) needed to assist the child in reaching those goals; and
>
> (cc) beginning not later than 1 year before the child reaches the age of majority under State law, a statement that the child has been informed of the child's rights under this title, if any, that will transfer to the child on reaching the age of majority under section 615(m).

20 U.S.C. § 1414(d)(1)(A)(i)(VIII); *see also* 34 C.F.R. § 300.320(b).

### 2. Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794; *see also Robinson v. District of Columbia*, 535 F.Supp.2d 38, 41 (D.D.C.2008) ("Section 504 prohibits programs and entities that receive federal funding from denying benefits to, or otherwise discriminating against, a person 'solely by reason' of that individual's handicap."). In the context of cases involving children who receive benefits pursuant to the IDEIA, courts have consistently recognized that in order to establish a violation of § 504, "'something more than a mere failure to provide the free appropriate education required by [the IDEA] must be shown.'" *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C.Cir.1984) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982)); *see also Robinson*, 535 F.Supp.2d at 42 (citing cases). "Specifically, plaintiffs must

ORDER-4

show either bad faith or gross misjudgment on the part of the governmental defendants." *Robinson*, 535 F.Supp.2d at 42.

### 3. The Americans with Disabilities Act

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To show that the exclusion was "by reason of" his or her disability, an individual must establish that the disability "actually play[ed] a role in the ... decision making process and [had] a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (quoting *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503–04 (5th Cir. 2002); *see also Cummings v. Woodson Senior High School*, 563 F.Supp.2d 256, 260 (D.D.C. 2008) (observing that a plaintiff must show she was discriminated against on the basis of her disability); *Hinson v. Merritt Educational Center*, 521 F.Supp.2d 22, 31 (D.D.C. 2007) (same).

### B. Factual Background and Procedural History

When AJP was two years old he was diagnosed with Pervasive Developmental Disorder. *See Jackson II* Compl., Dkt. No. 1 at ¶ 3. As such, he was entitled to receive special education services from DCPS pursuant to 20 U.S.C. § 1401(3)(B). He was enrolled in the District of Columbia Infant and Toddler Child Find Program and received language, occupational, and technical services. *Id.* In August 2004, when AJP was three years old, DCPS developed an IEP for him. It included speech therapy, occupational therapy, assistive technology, sign language instruction, behavioral management services, and a full time, one-to-one dedicated aide. *See*

ORDER-5

*Jackson I* Complaint, Dkt. No. 1 at ¶ 27. The IEP was signed by Ms. Jackson, and AJP was placed in Stoddert Elementary School. *See Jackson II* Complaint, Dkt. No. 1 at ¶ 4.[5]

In March 2005, DCPS notified Ms. Jackson that it would be changing AJP's placement because Stoddert Elementary School no longer offered the services that AJP needed per his IEP. *See* Plaintiff's Opposition to Dismiss in *Jackson I* ("*Jackson I* Opp."), Dkt. No. 11 at 2. Thereafter, on August 10, 2005, DCPS issued a new IEP, placing AJP in the citywide autism program at Barnard Elementary School. *Jackson I* Comp., Dkt. No. 1 at ¶ 30. The IEP also changed AJP's classification from "developmentally delayed" to "autistic." *Id*.

Ms. Jackson did not agree with the new classification and placement. *Id*. at 32. On September 13, 2005, she filed an administrative due process complaint with the Student Hearing Office asserting AJP's "stay put" rights.[6] Ms. Jackson alleges that DCPS denied her request. *Jackson II* Comp. at ¶ 8. One week later, on September 22, she filed suit in the United States District Court for the District of Columbia, *Laster v. District of Columbia*, 1:05-cv-01875 (Urbina), and moved for a temporary restraining order. Judge Urbina granted her request for a "stay put" injunction on September 28, 2005. *Jackson II* Compl., Dkt. No. 1 at ¶ 10. Thereafter, Judge Urbina issued an order requiring that "DCPS fund all related services and supplemental aids on [AJP's 2004 IEP]…*until [the] administrative due process complaint [before the Student*

---

[5]    Ms. Jackson also alleges that at around this time, in December 2004, she found a bruise on AJP's head when she picked him up from school. *Jackson I* Opp. at 2. She alleges that AJP suffered a seizure later that evening and was taken to the hospital where he received a CT Scan. *Id*. She claims that she was told the CT Scan was normal and that AJP had suffered a seizure. *Id*. AJP had another seizure in January 2005 and in April 2006, he was hospitalized for a "huge" seizure. *Jackson II* Comp. Dkt. 1 at ¶ 4. She claims that during this stay, the hospital staff informed her that the CT Scan from 2004 showed some swelling of AJP's brain. *Id*. at ¶ 5. Ms. Jackson raised these allegations for the first time in *Jackson I* in her Opposition to defendants' Motion to Dismiss. Defendants claim that this is the first time that DCPS was made aware of the alleged December 2004 incident. *Jackson I* Reply, Dkt. No. 12 at 4. The allegations are re-iterated in the *Jackson II* Complaint. *See Jackson II* Comp. Dkt. No. 1.

[6]    The IDEIA allows for a student to remain in his or her "then current educational placement," referred to as the student's "stay put" placement, pending resolution of the administrative proceedings.

ORDER-6

*Hearing Office] is decided* and any appeal therefrom concluded…." *See Laster*, Dkt. No. 4, September 30, 2005 Order (emphasis added).

The hearing on the administrative complaint had been scheduled for November 10, 2005. However, after Judge Urbina's ruling, counsel for Ms. Jackson removed the hearing from the Student Hearing Office's calendar. *See Jackson I* Defendants' Opposition to Request for Temporary Restraining Order ("Def. Opp. to TRO"), Dkt. No. 4 at 2. From November 2005 to September 2008, no further administrative proceedings were requested or held for AJP. *Id.*

In November 2005, Ms. Jackson withdrew AJP from DCPS and began homeschooling him. *Id.* From November 2005 through July 2009, DCPS did not have any contact with AJP. *Id.* DCPS claims that Ms. Jackson denied it access to AJP, and as a result, it was unable to evaluate and update his IEP. *Id.* However, per Judge Urbina's September 30, 2005 Order, DCPS was still required to pay for all of AJP's services and supplemental aides. *See Laster*, Dkt. No. 4-3.

DCPS convened a Multidisciplinary Team ("MDT")/IEP meeting on October 17, 2006 in order to review and revise AJP's IEP. The parties' descriptions of the meeting differ. DCPS claims that Ms. Jackson did not cooperate, instead arguing that per Judge Urbina's order, AJP's 2004 IEP remained in effect. Ms. Jackson counters that she wanted to participate in the meeting but was forceably removed by a security guard when she tried to tape record the meeting. *Jackson II* Compl. Dkt. No. 1 at ¶ 134.[7]

On September 23, 2008, DCPS moved for relief from Judge Urbina's Order. *Laster*, Dkt. No. 60. DCPS argued that the IEP was no longer appropriate for AJP because it was over four

---

[7]    Also around this time, DCPS petitioned Judge Urbina to modify the September 30, 2005 Order to allow payment by the school district to AJP's service providers to be made every 15 days rather than weekly. *Laster*, Dkt. No. 36. The court granted DCPS' request. *Id.* at Dkt. No. 46. Ms. Jackson claims that after the court made this modification, DCPS began disputing all of ARJ's aide's and service provider's invoices. *See Jackson I* Plaintiff's Opposition to Motion to Dismiss ("*Jackson I* Opp. to Mot. Dis."), Dkt. No. 11 at 5-6.

years old. *Id.* In its stead, DCPS sought an order requiring Ms. Jackson to make AJP available for classroom observation and re-evaluation, and to attend and participate in an IEP meeting. *Id.* Judge Urbina granted the motion on January 22, 2009, thereby terminating the September 30, 2005 stay put order. *Id.* at Dkt. Nos. 73 and 74. In his Memorandum Opinion, Judge Urbina instructed the parties to "work together to update AJP's IEP in accordance with the IDEA." Dkt. No. 74 at 7.[8]

Thereafter, DCPS sent Ms. Jackson two letters requesting to meet with her to develop the new IEP. Ms. Jackson did not respond to the letters, but instead, on January 26, she filed an administrative due process complaint with the Student Hearing Office, requesting a stay put order. *See Jackson II* Compl. at ¶ 16. She then filed another due process complaint on February 24, 2009. Both actions were dismissed without prejudice; Ms. Jackson also withdrew the complaints. The record is unclear which event—dismissal or withdrawal—occurred first.

Then, on March 23, 2009, Ms. Jackson filed another due process complaint. In it, she sought independent evaluations of AJP, a stay put order for AJP and his providers, transportation costs, and compensatory education for "failing to fund certain services that were ordered by Judge Urbina." *Jackson I*, Dkt. No. 9-3. The case was assigned to Hearing Officer Terry Banks. *Jackson I* Compl. at ¶ 17. The parties attempted to meet for the required pre-hearing resolution conference, but Ms. Jackson alleges that a dispute arose over whether she was required to re-enroll AJP in the District of Columbia school system before the necessary observation and

---

[8]     During this same time-period, the parties were litigating the payment dispute before Special Master Elise Baach. *See Jackson I* Def. Opp. to TRO at 3 fn. 1. Also during this time, Ms. Jackson alleges that Natalia Houston, special assistant to the Director of Special Education for DCPS reported Ms. Jackson to The District of Columbia's Child and Family Services for suspected educational neglect. *Jackson I* Opp. Mot. to Dis. at 7-8. She claims that Ms. Houston reported her to Child Family Services in retaliation for Ms. Jackson's refusal to dismiss the suit before Judge Urbina. *Id.*

evaluation could take place. *Id*. at ¶¶ 21-24. Ms. Jackson claims that the parties spent the next several months arguing about whether she had filed the correct paperwork. *Id*.

In the meantime, Hearing Officer Banks issued an interim order in which he denied Ms. Jackson's request for a Stay Put Order. *Id*. at ¶ 31. Ms. Jackson filed a motion for reconsideration and a motion for recusal based on bias. *Id*.[9] Officer Banks denied both motions.

Next Ms. Jackson filed *Jackson I*, the first of the two lawsuits presently before this court, on May 6, 2009. *See Jackson I*, Dkt. No. 1. She also sought a temporary restraining order to force compliance with Judge Urbina's September 30, 2005 Order. *Id*. at Dkt. No. 2.

Thereafter, on May 18, 2009, Hearing Officer Banks issued his final opinion. *See Jackson II*, Hearing Officer Decision dated May 18, 2009 (the "May 18, 2009 HOD"), attached to Dkt. No. 1. He dismissed Ms. Jackson's due process complaint, holding that Judge Urbina's order relieved DCPS of any obligation to fund services or aides related to the out-dated 2004 IEP. *Id*. He also held that AJP was not entitled to a stay put order because the only "placement" afforded to him had since been rescinded per Judge Urbina's order. *Id*. This left only the allegations of DCPS' failure to reevaluate AJP and update his IEP. However, the Hearing Officer held that all of the allegations in the three due process complaints occurred prior to January 22, 2009 (the date of Judge Urbina's order in which he rescinded the September 30, 2005 Order), and therefore were within Judge Urbina's jurisdiction. As such, the Hearing Officer lacked the authority to adjudicate the claims. *Id*. Nevertheless, Hearing Officer Banks ordered DCPS to convene a meeting to develop a Student Evaluation Plan and IEP for AJP. *Id*. at p. 5.

On June 15, 2009, United States District Judge Kennedy denied Ms. Jackson's request for a temporary restraining order. *Jackson I*, Dkt. No. 7. Ms. Jackson filed an Amended Complaint

---

[9]     Ms. Jackson alleges a series of emails and other improper contact between legal counsel for DCPS and Hearing Officer Banks. *See e.g. Jackson II* Compl. at ¶¶ 25-27.

ORDER-9

on June 16, 2009, and DCPS moved to dismiss it. *Id*., Dkt. Nos. 8 and 9. This motion is currently pending before the court and a subject of this order.

From May to July 2009, AJP received the following evaluations: (1) an Augmentative and Alternative Communication Evaluation; (2) an Occupational Therapy Evaluation; (3) a Psychoeducational Evaluation; and (4) a Speech and Language Evaluation. *See Jackson II* Compl. Ex. 1 at 8-11. The Children's National Medical Center ("CNMC") conducted the Augmentative and Alternative Communication Evaluation. *Id*. at 8. Based on its evaluation, CNMC recommended that AJP receive a "full [Augmentative and Alternative Communication "AAC"] system that includes symbols, gestures, and [a] durable speech generating device…[and] intensive speech therapy services to address his overall learning and assist in the manifestation of an AAC system into his daily activities, and expand his receptive and expressive language development." *Id*.

The occupational therapist, Kathy Chumas of Dynamic Development, recommended that AJP receive: (1) preferential seating in all academic settings; (2) a sensory diet; (3) an assistive technology device; (4) individualized speech and occupational therapy twice weekly; and (5) individualized occupational therapy once a week within the school setting. *Id*. at 9.

Interdynamics, Inc. completed AJP's Psychoeducational Evaluation. It concluded that the evaluation "strongly [indicates] a diagnosis of Autism that is co-morbid with ADHD." *Id*. at 10. It recommended that AJP needs a comprehensive, full time education program, speech and language therapy, occupational therapy, medication provisions, educational assistance, behavior management (ABA, toileting), one-to-one assistance, and transportation to and from his school day. *Id*.

ORDER-10

Interdynamics also completed AJP's Speech and Language Evaluation. *Id*. at 11. It found that AJP is non-verbal and primarily communicates through gestures. He has significant attention and sensory difficulties. *Id*. Interdynamics concluded that AJP's communication deficits were severe and recommended that he receive speech and language therapy three hours per week. *Id*.

In early August 2009, Ms. Jackson consented to bring AJP to Brightwood Elementary School so that DCPS staff members could observe him. *Jackson II* Compl. at ¶¶ 42 and 52. Thereafter, DCPS convened an Multidisciplinary team ("MDT") meeting on August 26, 2009 to update AJP's IEP and to determine placement. *Id*., Ex. 1 at 12. The participants in the meeting included Ms. Jackson, Natalia Houston (special assistant to the Director of Special Education for DCPS), Deidre Williams (Program Manager, DCPS Office of Special Education), Leslie Charles (a speech and language pathologist for DCPS), Annie Glanville (an autism specialist with DCPS), LaTanya Randolph (a school psychologist), Alicia Nti (an occupation therapist), Gayle Hall (a Program Manager for DCPS) and Shenaz Hussain (a physical therapist). *Id*. None of AJP's current service providers attended the meeting. *Id*.

Based on its observation of AJP, the evaluations, and Ms. Jackson's own recommendations, the MDT developed an IEP that prescribed 23.5 hours per week of specialized instruction in an out-of-general education environment, one hour per week of occupational therapy, and three hours per week of speech and language therapy. *Id*. The MDT agreed to purchase the assistive technology device recommended by CNMC and prescribed a dedicated aide for AJP for the morning bus ride, throughout the school day, and for the afternoon bus ride back to his home. *Id*. at 12-13.

In addition, the MDT placed AJP in Tyler Elementary School. *Id*. at 13. DCPS alleges that it selected Tyler Elementary because: (1) AJP could be placed in an intermediate program in

ORDER-11

which the students range in age from 8-10; (2) the classes have low student to teacher ratios; (3) the teacher is certified in special education and trained in Applied Behavior Analysis for children with autism; (4) the school employs the PECS methodology recommended in AJR's Psychoeducational Evaluation; (5) AJP's teacher would be assisted by two board certified behavior assistants; and (6) Tyler Elementary has a full time nurse, occupational therapist, and a speech and language therapist on its premises. *Id.*

Ms. Jackson objects to the IEP and AJP's placement at Tyler Elementary. She argues that the IEP does not provide sufficient accommodations for AJP's disabilities. Specifically, she claims that the IEP should have included the use of specific assistive technologies, and a plan in the event of AJP's "inevitable seizures." *Id.* She objects to his school placement because she believes that Tyler Elementary does not have an adequate occupational therapy room, does not have a full time nurse, and does not have adequate assistive technology services. Instead, Ms. Jackson requests that AJP be placed in one of two private schools, Ivymount or St. Coletta's. *Id.* at 13-14.

Ms. Jackson filed a second request for a temporary restraining order in *Jackson I*, seeking a stay put order. *See Jackson I*, Dkt. Nos. 13. The request was denied on September 22, 2009. *Id.* at Dkt. No. 15. Thereafter, on October 29, 2009, she filed another administrative due process complaint with the Student Hearing Office. *See Jackson II* Compl., Ex. 1 at 4. In it she alleged that DCPS had failed to: (1) develop an appropriate IEP, and (2) provide an appropriate placement. The complaint alleged additional violations that predated the May 18, 2009 HOD. *Id.* At the prehearing conference, Hearing Officer Banks excluded those claims pursuant to the doctrine of *res judicata*. *Id.*

ORDER-12

The due process hearing was held on January 11, 2010. *Jackson I Compl.* at ¶ 64. Ms. Jackson claims that she attempted to submit letters from AJP's physicians in support of her claim that Tyler Elementary is not a safe environment for him, but that Hearing Officer Banks excluded the letters as inadmissible hearsay. *Id.* at ¶¶ 65-67. She did present testimony from Melanie Davis (AJP's current care provider), Shirley Flemister (a paraprofessional at Riggs Special Center), and his grandfather. *See Jackson II* Compl., Ex. 1 at 6. DCPS presented testimony from Ms. Charles, Ms. Glanville, Ms. Houston, and Ms. Williams. *Id.*

On January 23, 2010, Hearing Officer Banks issued a final decision in which he affirmed DCPS' IEP and placement. *Id.* at ¶ 69. Ms. Jackson sought leave from this court to file a Second Amended Complaint, which Judge Kennedy denied on June 28, 2010. *See Johnson I*, Dkt. Nos. 17 and 20. However, while her motion was still pending, Ms. Jackson filed *Jackson II* on April 19, 2010. The case was designated related to *Jackson I* and assigned to this court. Ms. Jackson characterizes *Jackson II* as an appeal of Hearing Officer Bank's January 23, 2010 decision (the "January 23, 2010 HOD").

DCPS moved to partially dismiss *Jackson II*. *See Jackson II*, Dkt. No. 3. The motion is currently pending and is a subject of this order. In addition, Ms. Jackson moved for summary judgment in both cases. *See Jackson I*, Dkt. No. 21; *Jackson II*, Dkt. No. 7. On March 23, 2010, per DCPS's request, the motions were dismissed without prejudice pending the resolution of DCPS' motions to dismiss. On October 18, 2011, both cases were transferred to this district court judge. *Jackson I*, Dkt. No. 25; *Jackson II*, Dkt. No. 11.

## III.  STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, (1957). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65*; see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C.1994). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 671.

ORDER-14

## I.    DISCUSSION

### A.    *Defendants' Motion to Dismiss Jackson I*

Ms. Jackson characterizes *Jackson I* as both an appeal of the May 18, 2009 HOD and an action seeking "injunctive stay put relief." *Jackson I*, Dkt. No. 8 at 2. The Amended Complaint includes two claims: (1) that the May 18, 2009 HOD violated the IDEIA because "the relief granted was not adequate or appropriate and is not consistent with the facts and law," and (2) because the May 18, 2009 HOD did not "award appropriate relief," she has been "denied federal statutory rights in violation of law and 42 U.S.C. § 1983." *Id.* at 5-6. As relief, Ms. Jackson seeks an order that: (1) DCPS maintain AJP in his current educational placement, which would include paying his service providers and transportation costs; (2) DCPS provide a "lump sum of four years of compensatory education to AJP or provide compensatory tutorial and related services to compensate AJP for the educational services that he was deprived as a result of Defendants' violation of his stay put rights;" (3) DCPS place AJR in private school at the school district's expense; and (4) DCPS convene an IEP meeting. *Id.* at 6-7. Defendants counter that the Amended Complaint must be dismissed because (1) to the extent that it is based on a "stay put" claim, it is barred by the doctrine of *res judicata*; (2) to the extent that it is based upon a Section 1983 or Section 504 claim, it fails to state a claim upon which relief may be granted; and (3) the remaining IDEA claims are moot.

### 1.    *Plaintiff's "Stay Put" Claim Is Barred by the Doctrine of Res Judicata*

Under the doctrine of *res judicata* "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Taylor v. Blakey*, 490 F.3d 965 (D.C.Cir. 2007) *rev'd on other grounds*, 553 U.S. 880 (2008) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)). *Res judicata* bars re-litigation

ORDER-15

both of "issues that were" and of issues that "could have been raised" in the prior action. Defendants argue that plaintiff has already received a final judgment on the merits of her "stay put" claim—Judge Urbina's January 22, 2009 Order in which he set aside the September 30, 2005 Order—thus, the claim is barred by *res judicata*.

The court agrees. Ms. Jackson describes the Amended Complaint as an action "seeking injunctive stay put relief," so that AJP may remain in his "current educational placement." *Jackson I*, Dkt. No. at 2, 7. By "current educational placement," Ms. Jackson is referring to the placement and accompanying services set in place by Judge Urbina's September 30, 2005 Order. However, Judge Urbina has already rejected Ms. Jackson's effort to continue this placement. *See Laster*, 05-1875 (RMU), Dkt. No. 69 at 7 (setting aside the September 30, 2005 Order because "post-judgment changes, including the fact that AJP is now 7 years old and the 2004 IEP is out of day, weigh in favor of setting aside the [order]"). This is a final judgment on the merits. Accordingly, the claim is barred by the doctrine of *res judicata*.

### 2. *Plaintiff Has Failed to State a Claim for Relief under Section 1983*

"IDEA violations can be the predicate for a § 1983 claim based on those statutory violations." *Johnson v. District of Columbia*, 190 F.Supp.2d 34, 46-47 (D.D.C. 2002). In order to maintain such a claim, a plaintiff must show: (1) that the defendant violated IDEA; (2) that "exceptional circumstances" exist, such that the conduct of the defendant causing the IDEA violation was "persistently egregious and prevented or frustrated [plaintiff] from securing equitable relief under the IDEA"; (3) that the "District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations"; and (4) that "normal remedies offered under the IDEA—specifically, compensatory education—are inadequate to compensate [plaintiff] for the harm that he [or she] alleged has suffered." *Walker v. District of Columbia*, 157

F.Supp.2d 11, 30 (D.D.C. 2001); *see also, Shelton v. Maya Angelou Public Charter School,* 656 F.Supp.2d 82 (D.D.C. 2009), *R.S. v. District of Columbia*, 292 F.Supp.2d 23, 29 (D.D.C. 2003); *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C.Cir. 2000).[10]

Plaintiff does not meet this burden. The Amended Complaint is comprised of twelve factual allegations, numbered 6-17. *Jackson I*, Dkt. No. 8 at 4-5. Paragraph 7 provides residential information for AJP. Paragraphs 8-10 describe administrative procedures, and paragraphs 11-16 reiterate the actions that the May 18, 2009 HOD ordered the parties to take. Paragraph 17 reaches a sweeping conclusion that the May 18, 2009 HOD "did not fully address factually or legally all relief sought by plaintiffs in their due process complaint, such as compensatory education, reimbursement costs and expenses and transportation and stay put." *Id*. at 5. Paragraph 6 of the Amended Complaint "re-alleges the allegations contained in the complaint." *Id*. at 4. However, the Complaint is equally bereft of any factual allegations supporting a Section 1983 claim.

In short, the Complaint and Amended Complaint are devoid of any factual allegations that would support a Section 1983 claim. Ms. Jackson does not allege facts from which the court can infer that DCPS has a custom or practice that was the "moving force behind the alleged IDEA violation," that "exceptional circumstances" exist, or that the "normal remedies offered under the IDEA" are "inadequate to compensate" AJP for the harm that he has allegedly suffered. Although the threshold to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is relatively low, Ms. Jackson's failure to allege *any* facts that would tend to support a claim under Section 1983 renders dismissal of this claim appropriate. *See Twombly*, 127 S. Ct. 1955, 1960 (2007).

---

[10] Some district court decisions consider only the first and third factors of this test. *See, e.g., Johnson*, 190 F.Supp.2d at 46-47; *Zearley v. Ackerman*, 116 F.Supp.2d 109, 114 (D.D.C. 2000).

### 3.    *Plaintiff Has Failed to State a Claim under Section 504*

To state a claim under Section 504 "a plaintiff must show that he or she was discriminated against solely by reason of his [or her] handicap." *Walker v. District of Columbia*, 969 F.Supp. 794, 797 (D.D.C. 1997) (internal quotations omitted). The D.C. Circuit has noted that "something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown." *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C.Cir. 1984) *quoting Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8ᵗʰ Cir. 1982). Instead, a plaintiff must show bad faith or gross misjudgment on the part of a defendant. *Walker*, 969 F.Supp. at 797; *see also, R.S.*, 292 F.Supp.2d at 28.

Once again, the Complaint and Amended Complaint are devoid of any factual allegations to support a Section 504 claim.[11] Ms. Jackson did not allege that AJP was treated differently from non-disabled students solely because of his disabilities. Nor did she allege anything actionable that would tend to demonstrate gross misconduct or bad faith by DCPS. Accordingly, dismissal of the Section 504 claim is warranted.

### 4.    *The May 18, 2009 HOD*

Next Ms. Jackson asks the court to enter an order declaring "that the relief ordered by the hearing officer was inadequate and inappropriate as a matter of law." *Jackson I*, Dkt. No. 8 at 6. She states that the May 18, 2009 HOD is "not in line with the facts of the case" (*id.* at 2), and that the hearing officer "did not fully address factually or legally all relief sought by Plaintiffs." Id. at ¶ 17. However, the Complaint and Amended Complaint are devoid of any factual

---

[11]       The only mention of Section 504 in the Amended Complaint is a jurisdictional claim. *See Jackson I*, Dkt. No. 8 at ¶ 1. Count Three of the Complaint does claim a Section 504 violation, stating "Defendants discriminated against Plaintiff in violation of Section 504." However, there are no facts alleged in the Complaint to support this allegation. In her opposition to the motion to dismiss, Ms. Jackson alleges that DCPS demonstrated bad faith and gross misconduct by having her physically removed from an IEP meeting in 2006. She also implies that DCPS abused AJP in 2004 and is responsible for his seizures. *See Jackson I*, Dkt. No. 11 at 21-22. Again, none of these allegations were pled in the Complaint or Amended Complaint.

allegations supporting this claim. Accordingly, this claim must be dismissed. *See, Twombly,* 127 S.Ct. at 1974 (a plaintiff is required to plead enough facts to state a claim for relief that is plausible on its face); *Bergen v. Rothchild*, 648 F.Supp. 582, 586 (D.D.C. 1982) ("The complaint must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing party to prepare an adequate pleading").

### B. Defendants' Motion to Dismiss, in Part, Jackson II

On April 19, 2010, while *Jackson I* was still pending, Ms. Jackson filed her second lawsuit with this court, *Jackson v. Rhee*, et al., 1:10-cv-00604 (BJR) ("*Jackson II*"). Ms. Jackson characterizes *Jackson II* as an appeal of the January 13, 2010 HOD. Notwithstanding this characterization, the Complaint also seeks redress pursuant to Section 1983, the ABA, and Section 504.[12] Defendants move to dismiss all but Count I of the Complaint.[13] Defendants contend that Counts II-VI are barred by the statute of limitations and/or the doctrine of *res judicata*, or that they fail to state a claim upon which relief may be granted. In addition, defendants move to dismiss Defendant Michelle Rhee from the action because the District of Columbia is the proper party Defendant.

### 1. Dismissal of Defendant Rhee Is Warranted

The court agrees that Ms. Rhee is not a proper party defendant to this action. Ms. Jackson brought suit against Ms. Rhee "in her official capacity as Chancellor of [DCPS]". *See Jackson II*, Dkt. No. at 1. Government officials sued in their official capacities are not personally liable for damages. Instead, a plaintiff must look to the municipality. *See Atchinson v. District of*

---

[12]     Ms. Jackson seeks the following relief: (1) compensatory damages in the amount of twenty million dollars; (2) compensatory education in the amount of $275,000; (3) private placement with a one-time lump sum payment of twelve million dollars for tuition; and (4) declaratory relief. *Jackson II*, Dkt. No. 1 at 27-28.

[13]     Count I is the appeal of the administrative due process hearing, which Defendants concede is properly before this court.

Columbia, 73 F.3d 418, 424 (D.C.Cir. 1996) *citing Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Courts routinely dismiss corresponding claims against individuals in their official capacity as "redundant and an inefficient use of judicial resources." *Robinson v. District of Columbia*, 403 F.Supp.2d 39, 49 (D.D.C. 2003); *see also, Jenkins v. Jackson*, 538 F.Supp.2d 31, 33-34 (D.D.C. 2008).

Ms. Jackson does not allege that Ms. Rhee was directly involved in any of the incidents listed in the Complaint, nor does she allege that Ms. Rhee directed, approved or encouraged the actions of those who allegedly harmed AJP. In fact, there are no allegations whatsoever against Ms. Rhee in the Complaint. Ms. Rhee's presence in this action is duplicative and an ineffective use of judicial resources. Accordingly, dismissal of this case against Ms. Rhee is appropriate.

### 2. *Count II Is Duplicative of Count I*

Next, defendants argue that Count II must be dismissed because it fails to state a claim upon which relief may be granted. The court agrees. Count II is titled "Defendants by Custom or Practice have [Violated Plaintiff's] Rights Pursuant to IDEA." *Jackson II*, Dkt. No. 1 at 22. It contains two paragraphs—paragraph 126 and paragraph 127. *Id*. Paragraph 126 re-allege the introduction and proceeding paragraphs in the Complaint. *Id*.[14] Paragraph 127 summarily concludes that "[p]ursuant to IDEA, Defendants violated Plaintiffs' [sic] rights." *Id*. Ms. Jackson has already asserted the alleged violations of IDEIA set forth in the preceding 125 paragraphs of the complaint in Count I. Accordingly, Count II is duplicative and will be dismissed.

### 3. *Count III Fails to State a Claim upon Which Relief May Be Granted*

Count III of the Complaint is the Section 1983 claim. Defendants submit that this claim

---

[14]     Throughout the Complaint there are references to the incorporation of "Plaintiff's Complaint, first Amended Complaint and facts contained in their [sic] Opposition to Defendants' Motion to Dismiss." *See, e.g., Jackson II*, Dkt. No. 1 at ¶ 126, 128 and 130. Such pleadings do not exist. Accordingly, the court will disregard these statements.

ORDER-20

must be dismissed because it fails to state a claim upon which relief may be granted. The court agrees. As stated previously, in order to maintain a Section 1983 claim against a municipality such as the District of Columbia, the burden is on the plaintiff to establish that: (1) that the defendant violated IDEA; (2) that "exceptional circumstances" exist, such that the conduct of the defendant causing the IDEA violation was "persistently egregious and prevented or frustrated [plaintiff] from securing equitable relief under the IDEA"; (3) that the "District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations"; and (4) that "normal remedies offered under the IDEA—specifically, compensatory education—are inadequate to compensate [plaintiff] for the harm that he [or she] alleged has suffered." *Walker v. District of Columbia*, 157 F.Supp.2d 11, 30 (D.D.C. 2001); *see also, R.S. v. District of Columbia*, 292 F.Supp.2d 23, 29 (D.D.C. 2003); *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C.Cir. 2000).

Once again, Ms. Jackson has not met her burden. The Complaint is predicated on two alleged failures by DCPS—the failure to comply with the 2004 IEP and the failure to develop an appropriate new IEP and placement. This, without more, is insufficient to support a Section 1983 claim. Ms. Jackson must also set forth some factual basis to support an allegation that a municipal policy or custom caused DCPS to violate AJP's rights under the IDEIA. *See, e.g. Shelton*, 656 F.Supp.2d at 87 (dismissing Section 1983 claim because it did not set forth any factual allegations that could support a reasonable inference that the District of Columbia had a policy or practice of refusing to comply with HODs); *Trimble v. District of Columbia*, 779 F.Supp.2d 54, 59 (D.D.C. 2011) (dismissing Section 1983 claim because plaintiff failed to name or identify any policy, practice, or custom, or identify other incidents showing that the policy department had gender discriminatory policies); *Ekwen v. Fenty*, 666 F.Supp.2d 71, 79 (D.D.C.

ORDER-21

2009) (noting that plaintiff did not state a claim under Section 1983 because he did not pled any facts supporting the existence of a discriminatory policy or practice). Indeed, Ms. Jackson has not alleged that DCPS' alleged failures were somehow caused by a municipal custom or practice, nor has she set forth in her Complaint any factual allegations that would support a reasonable inference that the District or DCPS has or had a custom or policy of refusing to comply with or adequately develop IEPs. Accordingly, Count III must be dismissed.

4.      *Count IV Fails to State a Claim upon Which Relief May Be Granted*

Count IV of the Complaint includes the Section 504 and ADA claims. As previously discussed, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a Section 504 claim based on alleged IDEA violations, a plaintiff must allege that: (1) the disabled student was treated differently from non-disabled students solely because of his or her disabilities, and (2) school officials acted in bad faith or demonstrated gross misconduct. *Walker*, 157 F.Supp.2d at 797 *citing Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982) (liability will not be imposed as long as the "state officials have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals."); *see also, R.S. v. District of Columbia*, 292 F.Supp.2d 23, 28 (D.C.C. 2003).

Here, Ms. Jackson fails to state a claim under Section 504 because she has not alleged that AJP was treated differently from non-disabled students solely because of his disabilities, nor has she alleged anything in the Complaint that would tend to demonstrate gross misconduct or bad faith by DCPS. In her Opposition, Ms. Jackson argues that DCPS' placement of AJP in

ORDER-22

Tyler Elementary School was inappropriate because the school could not accommodate his disabilities. *See Jackson II*, Dkt. No. 5 at 19-20. She also states that AJP "has not been timely evaluated and has not had a proper IEP developed since 2004." *Id*. at 21. These arguments are nothing more than allegations of IDEIA violations, which are appropriately remedied by appealing an administrative due process hearing, in other words, Count I of this Complaint.

Similarly, Ms. Jackson has failed to plead an ADA claim. The ADA prohibits public entities from excluding qualified individuals with disabilities from participating in or receiving the benefits of "the services, programs, or activities" of that entity. 42 U.S.C. § 12132. As a local government, the District of Columbia is a public entity. *Id*. at § 12131(1)(a) (defining "public entity" as "any state or local government"). The elements of an ADA discrimination claim are: (1) that the plaintiff is a qualified individual with a disability; (2) that the public entity denied him the benefits of or prohibited him from participating in the entity's services, programs or activities; and (3) that denial or prohibition was "by reason of" his disability. 42 U.S.C. § 12132. While the IDEIA addresses incorrect or erroneous special education treatment, the ADA addresses discrimination against the disabled student. Thus, something more than a mere violation of the IDEIA is necessary in order to show a violation of the ADA. *Alston v. District of Columbia*, 770 F.Supp.2d 289, 298 (D.D.C. 2011).

Here, Ms. Jackson makes no allegation that DCPS discriminated against AJP based on his disability. In fact, there are no allegations in the complaint that AJP was discriminated against at all. Rather, Ms. Jackson argues that DCPS failed to develop a proper IEP and placement for AJP. In other words, she challenges the appropriateness of the special education program offered to AJP (an IDEIA claim), and not that DCPS deprived AJP access to the program based on his disability (an ADA claim). Accordingly, Count IV must be dismissed.

###### 5. *Count V Fails to State a Claim upon Which Relief May Be Granted*

In Count V, Ms. Jackson alleges that DCPS "retaliated" against her, but does not plead the legal basis for her claim. The court assumes that she is brings the claim pursuant to Section 504 and the ADA. Once again, the claim must be dismissed. Ms. Jackson alleges that DCPS retaliated against her in the following two ways: (1) on October 27, 2008, Natalia Houston allegedly reported to Child and Family Services that Ms. Jackson was neglecting AJP, and (2) in October 2006, a DCPS employee allegedly had a security guard escort Ms. Jackson from school premises because she wanted to tape record a meeting. *Jackson II*, Dkt. No. 1 at ¶¶ 133, 134. These allegations contain no reference to AJP's disabilities and certainly do not suggest that he was treated differently on the basis of his disabilities. In fact, the allegations do not reference AJP at all. Both the ADA and Section 504 address discrimination "by reason of" a disability and Ms. Jackson's Complaint is devoid of any allegations that AJP was discriminated against because of his disability. Accordingly, Count V fails to state a claim under the ADA or Section 504 and must be dismissed. *See, e.g., Cummings v. Woodson Senior High School*, 563 F.Supp.2d 256, 259 (D.D.C. 2008) (dismissing ADA and Section 504 claims on defendant's Rule 12(b)(6) motion because plaintiff asserted only a denial of FAPE and related services—claims cognizable under the IDEA); *Hinson v. Merritt Educational Center*, 521 F.Supp.2d 22, 31 (D.D.C. 2007) (dismissing ADA and Section 504 claims because plaintiff failed to allege that school treated son differently on the basis of his disability).

###### 6. *Count VI Is Duplicative and Fails to State a Claim upon Which Relief May Be Granted*

In Count VI of the Complaint, Ms. Jackson alleges "[r]eckless or negligent [spoliation] of evidence and further retaliation." *Jackson II*, Dkt. No. 1 at 23. She re-alleges many of the factual allegations pertaining to her appeal of the January 13, 2010 HOD, but she also alleges that

ORDER-24

"[d]efendants intentionally or negligently destroyed [the audio recording of the due process hearing] that is required to be kept and provided to the Plaintiffs pursuant to IDEA." *Id.* at 25. It is not clear from the face of the pleading what Ms. Jackson alleges is the legal basis for relief under this claim.

In her Opposition to the motion to dismiss, Ms. Jackson attempts to clarify Count VI by asserting that the "further retaliation" of which she alleged in the claim referred to "defendants deliberately contacting DC Child and Family Services alleging educational neglect when the parties were involved in administrative proceedings," and to the fact that she was physically removed from the IEP meeting in October 2008. *Jackson II*, Dkt. 5 at 23-24. This clarification does not salvage Count VI. These claims are duplicative of the retaliation claims that Ms. Jackson asserted in Count V, and as discussed *supra*, are insufficient to state a claim under Section 504 or the ADA.

Therefore, to the extent that Count VI alleges that defendants destroyed evidence, the claim rules afoul of Federal Rule of Civil Procedure 8 and must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face"). To the extent the Count alleges retaliation, for the reasons set forth *supra*, the claim runs afoul of Federal Rule 12(b)(6). Finally, to the extent that the claim alleges that Ms. Jackson was denied an impartial due process hearing, the allegations are duplicative of the allegations in Count I. As such, the court will treat these allegations as further factual support for Count I and dismiss them from Count VI. Accordingly, Count VI must be dismissed. [15]

---

[15] Defendants also argue that to the extent Ms. Jackson seeks to re-litigate the issue of whether AJP is entitled to "stay put" pursuant to Judge Urbina's September 30, 2005 order and whether DCPS must continue to pay for the services provided consistent with the 2004 IEP, the claim is barred by the doctrine of *res judicata*. The court agrees. For the reasons previously stated herein, any such claims must be dismissed.

# IV.    CONCLUSION

For the foregoing reasons, the court hereby:

1.      GRANTS Defendants' Motion to Dismiss the Amended Complaint in *Jackson I* (dkt. no. 9). The Amended Complaint is HEREBY DISMISSED with prejudice and the case is closed;

2.      GRANTS Defendants' Motion for Partial Dismissal of Complaint in *Jackson II* (dkt. no. 3). Counts II, III, IV, V and VI are HEREBY DISMISSED;

3.      Defendants are instructed to file an answer or other responsive pleading within thirty days of the date of this order;

4.      Defendants are further instructed to file the administrative record for this matter, including a transcript of the January 13, 2010 due process hearing, within sixty days of the date of this order. If defendants are unable to obtain a copy of the hearing transcript, they are instructed to submit an affidavit setting forth their efforts to obtain the transcript and why they were unable to obtain it. Defendants shall inform the court whether standard procedure was employed with respect to recording and preserving the audio recording and/or transcript of the hearing;

5.      In addition, the parties are instructed to file a joint status report within thirty days of the date of this order, up-dating the court on the status of AJP's current educational placement, any relevant changes in AJP's condition, and whether the parties are interested in mediating this

dispute.

DATED this 28th day of November, 2011.

A

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER-27